UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| J.P., a minor | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:07-CV-118-C |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

Plaintiff J.P. seeks judicial review of a decision of the Commissioner of Social Security denying his application for Supplemental Security Income, children's disability benefits, under Title XVI of the Social Security Act.

The United States District Judge reassigned this case to the United States Magistrate Judge for all proceedings. Consent to the jurisdiction of the United States Magistrate Judge was not filed on behalf of J.P. Pursuant to the order reassigning this case, the undersigned now files this Report and Recommendation. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

**I.    Judicial Review**

This court's review of a social security appeal is limited to determining (1) whether the Commissioner's final decision is supported by substantial evidence, and (2) whether the

Commissioner used the proper legal standards to evaluate the evidence. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citations omitted). Under this standard, the court is not permitted to reweigh the evidence or substitute its own judgment for that of the Commissioner. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Rather, the court must scrutinize the entire administrative record to determine whether substantial evidence supports the Commissioner's decision. *Neal v. Bowen*, 829 F.2d 528 (5th Cir. 1987).

## II. Statement of the Case

J.P.'s mother filed an application for children's benefits on her son's behalf on January 19, 2005. (Tr. 57-59, 94.) At that time J.P. was five years old. (Tr. 57-59, 376.) According to the medical records, J.P. suffers from severe asthma with associated respiratory abnormalities, allergic rhinitis, and sleep apnea. (Tr. 328, 359-60.) J.P. was hospitalized at least twice and intubated for respiratory difficulties before the age of two and once again at the age of five. (Tr. 112, 183, 297, 333.) He underwent a tonsillectomy and adenoidectomy when he was twenty-one months old. (Tr. 193.) He began using a Continuous Positive Airway Pressure (CPAP) machine during sleep after he was diagnosed with sleep apnea at the age of five years. (Tr. 328, 333). Other than his respiratory difficulties and sleep apnea, J.P.'s general health was described by a physician as "good." (Tr. 329.)

The Commissioner applies a three-step evaluation to determine whether a child is disabled. 20 C.F.R. § 416.924(a) (2007). Under the first step the Commissioner determines whether the child is engaged in substantial gainful activity. *Id*. Under the second step the Commissioner determines whether the child's impairment or combination of impairments is

2

severe. At the third step of the evaluation, the Commissioner determines whether the child has an impairment or impairments that meets, medically equals, or functionally equals a listed impairment in the regulations and whether such impairment has lasted or is expected to last for twelve months. *Id.* In this case, the Administrative Law Judge (ALJ) determined that J.P. was not engaged in substantial gainful activity and that he suffered from asthma and obstructive sleep apnea, which he characterized as a "severe combination of impairments." (Tr. 23.) The ALJ proceeded to the third step of the process and determined that J.P. did not have an impairment or combination of impairments that met or was medically or functionally equal to the severity of a listed impairment. *Id.* The ALJ's decision became the Commissioner's final decision after the Appeals Council denied request for review. (Tr. 10-12.) *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

### III. Discussion

J.P.'s counsel first argues that Listing 103.02(C)(2) applies to this case. Listing 103.02(C)(2) addresses chronic pulmonary insufficiency with frequent need for nocturnal supplemental oxygen to address persistent or recurrent episodes of hypoxemia. 20 C.F.R. pt. 404, subpt. P, app. 1 § 103.02(C)(2). Counsel points out that physicians have diagnosed J.P. with sleep apnea and that he uses a CPAP machine while sleeping and that J.P.'s representative at the hearing noted that Listing 103(C)(2) might be applicable; she claims the ALJ failed to mention the criteria of Listing 103.02(C)(2) or discuss why J.P.'s sleep apnea does not meet the criteria of the listing.

Counsel's arguments do not require remand. First, the ALJ addressed Listing 103.02,

the listing at issue, and specifically determined that J.P.'s impairments did not satisfy any of the criteria under the listing. (*See* Tr. 23.) Although the ALJ did not specifically discuss why J.P.'s impairments did not render him disabled under the criteria specific to Listing 103.02(C)(2), his omission was harmless and does not, therefore, require remand. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (absence of discussion regarding why the claimant's impairments do not meet criteria of specific listing requires remand only if omission affects substantial rights of the claimant). The ALJ's omission of a discussion regarding the specific criteria of Listing 103.02(C)(2) was harmless and did not affect J.P.'s substantial rights because J.P. would be found disabled under the listing only if the record contained medical findings that supported each of the criteria of Listing 103.02(C)(2). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). Such findings are not present in this case. The medical records do not show that J.P. suffered from persistent or recurrent episodes of hypoxemia.[1] J.P. experienced hypoxemia during two episodes of respiratory distress in 2001 before he was two years old. (Tr. 112, 118, 183.) It was noted in January 2005 that J.P. might suffer from obstructive sleep apnea and tests were ordered. (Tr. 334.) In February 2005 Suzanne A. Beck, M.D., noted that J.P. suffered from sleep apnea and that J.P.'s mother reported that using a C-PAP machine had "made a tremendous difference in his sleeping at night." (Tr. 330.) Although the evidence shows that J.P.'s physician

---

[1] Hypoxemia is defined as subnormal oxygenation of arterial blood. STEDMAN'S MEDICAL DICTIONARY 867 (27th ed. 2000). To meet the criteria of Listing 103.02(C)(2), the record must contain medical findings of persistent or recurrent episodes of hypoxemia. 20 C.F.R. pt. 404, subpt. P, app. 1 § 103.02(C)(2).

prescribed a C-PAP machine for J.P. to use while sleeping, there is no evidence that the machine was prescribed to address persistent or recurrent episodes of hypoxemia. Counsel's arguments related to Listing 103.02(C)(2) are without merit.

Counsel also complains of the ALJ's analysis of J.P.'s abilities in functioning. According to the regulations, once it is determined that the child's impairments do not meet or medically equal a listed impairment, the ALJ must analayze the child's abilities in functioning to determine whether his impairments result in limitations that functionally equal a listed impairment. 20 C.F.R. § 416.926a(a). The ALJ must consider the impact of the child's impairments in six domains of functioning. 20 C.F.R. § 416.926a(b)(1). The six domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). The child's impairments functionally equal a listed impairment if they result in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. 20 C.F.R. § 416.926a(a).

Counsel points to an evaluation form completed on March 22, 2005, by Monica Fisher, M.D., a consulting and non-examining physician, as evidence that J.P. suffered from marked limitations in the domain of health and physical well-being. (See Tr. 349-53.) Counsel also complains that the ALJ found that J.P. had less than marked limitations in the domain of caring for self despite the fact that "intervention (nocturnal supplemental oxygen) is required." Counsel argues that the need for such intervention indicates at least a marked

5

limitation in this domain. Counsel's arguments are without merit. In regard to the domain of health and physical well-being, Dr. Fisher indicated that J.P.'s impairments resulted in less than marked limitations rather than marked limitations in his health and physical well-being. (*See* Tr. 351.) The evidence does not support a conclusion that J.P.'s impairments resulted in marked limitations in his health and well-being.

The regulations direct that in the domain of caring for self, the ALJ must consider how well the child maintains a healthy emotional and physical state, including how well the child gets his physical and emotional wants and needs met in an appropriate way and how he copes with stress, changes in his environment, and whether he can take care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The regulations provide examples of age-appropriate functional abilities. Children of preschool age should be able to accomplish tasks such as putting on shoes and getting a snack. 20 C.F.R. § 416.926a(k)(2)(iii). School-age children between the ages of six and twelve should be able to accomplish tasks such as dressing and bathing themselves. 20 C.F.R. § 416.926a(k)(2)(iv).

J.P. was five years old when his mother applied for benefits on his behalf and seven years old on the date of the hearing. (Tr. 57-59, 375.) The ALJ was required to consider evidence relevant to this time period regarding J.P.'s activities at home, at school and daycare, and in his community. 20 C.F.R. § 416.926a(b). The ALJ considered such evidence. The ALJ noted that J.P.'s mother stated in application documents that J.P.'s impairments did not affect his ability to take care of his personal needs and that he was

capable of brushing his teeth and bathing himself. (Tr. 30; *see* Tr. 92.) The ALJ also noted the testimony of J.P.'s caretaker, a woman with whom he lived at the time of the hearing, regarding J.P.'s ability to bathe and dress himself. (Tr. 30; *see* Tr. 381.) The fact that J.P. uses a C-PAP machine does not require a conclusion that he suffers marked limitations in his ability to care for himself. A C-PAP machine is a form of treatment for sleep apnea rather than an assistive device that would enable a child to care for himself. The evidence the ALJ cited provides substantial evidence to support his decision that J.P. did not experience marked or extreme limitations in the domain of caring for himself.

Substantial evidence also supports the ALJ's conclusion that J.P. did not experience marked or extreme limitations in any of the six domains. J.P.'s mother indicated on application documents that J.P. did not have problems talking clearly or communicating; that he experienced no limitations in physical abilities such as catching a ball and riding a tricycle; that he was able to learn; and that he was able to socialize and play with other children. (Tr. 88-92.) In addition, J.P.'s kindergarten teacher reported that he had "no functional limitations"; that he had no speech problems; that his respiratory difficulties did not interfere with his performance in the classroom; and that he participated in all activities except those that required running. (Tr. 82-83.)

In her final arguments counsel complains of the ALJ's statement that "there is "a compliance issue in this case." (Tr. 31.) Counsel points out that J.P. has undergone substantial treatment for his chronic respiratory problems and that there is some evidence of an inability to pay for medications and that the ALJ did not consider such evidence. The

7

arguments do not require remand. The ALJ's decision was not based on whether J.P. was compliant with treatment; the statement the ALJ made regarding compliance relates to the impact of treatment on J.P.'s impairments. The ALJ noted that despite non-compliance with medication, progress notes showed that J.P. was functioning satisfactorily and that "compliance with medications could be expected to improve the claimant's condition even more." *Id*.

Contrary to counsel's arguments, ability to afford treatment is not an issue in this case. Although J.P.'s caretaker testified that she had to pay for J.P.'s medications with her own money, she stated that she paid for them because she felt it was important that J.P. have the medication. (Tr. 384.) There is no indication in the medical records that J.P.'s mother or caretaker were unable to obtain medications because they were unable to afford them or that J.P.'s non-compliance with prescribed treatment was the result of an inability to afford or obtain medication. (*See* Tr. 361-63 (medical personnel noting that the family was unsure of medication for nebulizer; medical personnel noting that J.P. was not taking his medications correctly and that family was advised regarding dangers of non-compliance; medical personnel noting that J.P. had been out of town for three weeks and had not used his asthma medications.))

The ALJ's decision was reached through the proper application of the three-step analysis applicable to child disability claims and is supported by substantial evidence. The decision is therefore conclusive and must be affirmed. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).

## IV. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss the complaint with prejudice.

## V. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: January 28, 2008.

NANCY M. KOENIG
United States Magistrate Judge